GRENADA BANK *v.* WIRT ADAMS, STATE REVENUE AGENT.

[40 South. Rep., 4.]

1. BANKS. *Taxation. Unpaid dividends.*

Where a bank declared a dividend and issued to its stockholders time checks therefor, it is liable for taxes on the amount thereof accruing before the maturity of the time checks.

2. BOARD OF SUPERVISORS. *Judgment. Res adjudicata.*

A mere recital touching a previous assessment in the order of a board of supervisors disallowing an assessment made at the instance of the state revenue agent is not *res adjudicata*, especially where there is no plea of *res adjudicata* and no former judgment given in evidence.

FROM the circuit court of Grenada county.

HON. A. McC. KIMBROUGH, Judge.

Adams, state revenue agent, the appellee, was plaintiff in the court below; the Grenada Bank, the appellant, was defendant

there.    From a judgment in plaintiff's favor the defendant
appealed to the supreme court.    The facts are stated in the
opinion of the court.

*Cowles Horton,* and *S. A. Morrison,* for appellant.

The question is *res adjudicata.*    The board of supervisors, at
its August meeting, had the identical question up before it, and,
whether right or wrong, then and there solemnly adjudged that
the bank was not the owner of, nor was it taxable with, this
$60,000 dividend declared in the previous January.    Now, if
Code 1892, § 3787, is conclusive of anything, it is that the party
is the owner of, or taxable with, the property.    Now, on this ques-
tion of ownership, or taxability, the board decided that the bank
was not liable.    If the action of the board is conclusive against
the taxpayer that he owns certain property, then the decision of
the board that he does not own this specific property is certainly
conclusive against the state.    Surely this court will not hold,
in a case of this kind—where the sole question is, Which of two
parties is assessable with the property ?—that the state is not con-
cluded by an adjudication against the state as to one of the
parties, from which no appeal is taken.    We cite the court to the
case of *Revenue Agent* v. *Clarke,* 80 Miss., 134 (s.c., 31 South.
Rep., 216), to the very excellent brief for the revenue agent, from
which the court so copiously quoted.    There was but one point
in the case, and can be but one—to wit, "To whom is the prop-
erty assessable ?"    The board having decided that, and the assess-
ment roll having been approved, the question becomes now, as to
the revenue agent's action, *res adjudicata.*

The law does not authorize the taxation of this money to the
bank.    Laws 1896, ch. 34, sec. 10, under which this tax is
claimed, provides for the taxation of two specific properties to
the bank—viz., its capital stock, and the sum of all its undivided
profits, surplus, and accumulation of any sort constituting part
of the assets of the bank.    Taxes upon its capital stock were

paid for 1900, and if the bank is taxable at all, it is upon this money as being a part of its undivided profits, surplus, or accumulation, etc., on February 1, 1900.    If this money was a part of the bank's assets on that date, the tax claimed should be sustained and the bank compelled to pay it; if not a part of the bank's assets on February 1, 1900, the tax cannot be collected, because the law does not provide for or contemplate its taxation. If this money was embraced within the terms of the act, and subject to taxation, as surplus, etc., it was the bank's property, and not the individual property of the stockholders.    *Tennessee v. Whitworth,* 117 U. S., 129; *Bank v. Tennessee,* 161 U. S., 134.

It is familiar to all that when a corporation accumulates a surplus, etc., this collection of money, etc., belongs to the body politic until a distribution thereof has been regularly made among its members.    The distinction between the corporate ownership of this accumulation by the corporation, and the individual interests of the stockholders in this property, is well defined.    The corporation owns the property; stockholders have an interest in the corporation only by virtue of the fact that they are stockholders therein.    *Gibbons v. Mahon,* 136 U. S., 549; *Humphreys v. McKissack,* 140 U. S., 304; 2 Thompon Corp., sec. 2810; Clark on Corp., 5-8; 10 Cyc., 273, 275; *Button v. Hoffman,* 50 Am. St. Rep., 131.

Before a dividend has been declared, a share of stock represents the whole interest which the stockholder has in the corporation, and when he transfers his stock he transfers his entire interest; and a dividend subsequently declared, without reference to the source from which, or the time during which, the funds were acquired by the corporation, necessarily belongs to the owners of the stock at the time the dividend was declared.    *Jermain v. Railroad Co.,* 1 Am. & Eng. Corp. Cas., 115; *Boardman v. Railroad Co.,* 84 N. Y., 157; *Timberlake v. Compress Co.,* 72 Miss., 323 (s.c., 16 South.

Rep., 530). This is so for the reason that the stock carries with it all the interest of the stockholder in the bank's property, and when he transfers his stock he transfers absolutely and unqualifiedly all the interest he has, of every sort, kind, and character, in the property owned by the corporation. On January 2, 1900, the assets of the bank amounted to one hundred and fifteen per cent of its capital stock, or, in round numbers, $69,000. Had a stockholder transferred his stock on that date prior to this declaration of dividend, he would have transferred all his interest in this money, because, before the declaration of the dividend, the $69,000 belonged to the bank. It is, therefore, certainly true that were the assessment made relative to January 1st, the bank would be liable for the tax, because, on that date, this money was its property, within the meaning of the act. We must, however, consider the question relative to February 1, 1900, and not otherwise. Was this money embraced within the meaning of the act of that date? We think not. We contend that from and after January 2, 1900, this $69,000 belonged to, and was the individual property of, the stockholders owning stock on that date. The court recognized this in the Timberlake case, *supra*. Certainly this money belonged to the bank before the declaration of the dividend, and equally certain is it that it belonged to the stockholders, individually, thereafter. Clark on Corp., 342, 343; Morse on Banks and Banking (2d ed.), 134; Cook on Stock and Stockholders, secs. 534, 545, 546; Morawetz on Corp., 351; 2 Thomp. on Corp., secs. 2227, 2228.

*Green & Green,* for appellee.

A bank check payable at a future day is merely a bill of exchange (5 Am. & Eng. Ency. Law [2d ed.], 1032), and entitled to grace. *Id.*

A bank check is not an assignment of the fund on deposit, and is revocable. *Louisville Banking Co.* v. *Paine,* 67 Miss., 678 (s.c., 7 South. Rep., 462).

The effect of the transaction would be that these profits still continued to be the property of the bank, with an obligation on its part, on a future day, to pay them to the stockholder named in the check. The stockholder by this agreed that the bank might continue to use and invest these amounts as any other funds of the bank, and had no right to call for their payment until the maturity of the bill of exchange, or check, and with three days' grace. Under this, the first check, payable February 1st, was not payable until February 4th. Thus, on February 1st, the law-day of taxes, this money was still assets of the bank, and was there as dividends unpaid on March 31, 1900.

If the bank, on January 1st of each year, could declare dividends payable in February, March, and April, and thereby avoid taxation on its undivided profits under guise of dividends unpaid, it might so declare them payable on January 1st the following year, and thus get the benefit of the fund and pay no taxes thereon. The taxes due by the bank are to be chargeable to it, and not to the stockholders directly. Dividend checks would be a clever device to avoid taxation, both by the bank and the stockholder.

There is no evidence in the record to show that in the circuit court the appellant interposed the plea of *res adjudicata* of the board of supervisors.

CALHOON, J., delivered the opinion of the court.

The record, as corrected by the agreement of counsel, shows that, at the instance of the state revenue agent, the bank was assessed for $60,000 of values of "solvent credits, money loaned, money on hand," etc.; that it paid taxes on its capital stock of $60,000, but not on its "dividends unpaid" of $60,150. The bank declared a dividend to its stockholders of one hundred and fifteen per cent, of which it paid them fifteen per cent in cash, and it disposed of the remaining one hundred per cent by giving them signed time checks, payable at four different future dates,

87 Miss.—43

each for twenty-five per cent of the total.   The main question is as to whether this money was the property of the bank and taxable to it before the time checks were properly presentable for payment. We think it was.   The bank held it, with the perfect right to use it as any other of its funds; and this was agreed to by the stockholders, who gave the time by taking the checks, which they knew they could not legally demand the cash for until the day they fell due, with three days of grace added, as on any other class of bills of exchange, a time check being merely a bill of exchange and entitled to three days of grace.   The money was then as much bank assets, in the shape of unpaid dividends, as it was before the declaration of dividend, in the shape of surplus. Otherwise, it would be an easy device for a bank to escape taxation altogether on its surplus or undivided profits by declarations of dividend and long-time checks.

The board of supervisors, in its judgment, which gives rise to this appeal, recites as follows: "The board, having heretofore —in August, 1900—specially passed upon the assessment of the. Grenada Bank, and this particular item herein referred to, and having accepted the said assessment as full, equitable, and just," proceeds to adjudge that the assessment at the instance of the revenue agent is dismissed.   The bank now, here, relies on the recital as *res adjudicata*.   There is no plea of *res adjudicata* in the record, no former judgment is produced in evidence, and we, of course, cannot hold the recital as supplying them.

*Affirmed.*